**RHULEN AGENCY, INC., Plaintiff,**

**v.**

**ALABAMA INSURANCE GUARANTY ASSOCIATION, et al., Defendants.**

**No. 88 Civ. 9234–CLB.**

United States District Court, S.D. New York.

June 27, 1989.

---

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

By motion fully submitted on June 12, 1989, defendants, sued as the respective state guaranty associations protecting the policy holders of Transit Casualty Company ("Transit"), a defunct Missouri corporation, move to dismiss this diversity action for lack of subject matter jurisdiction and/or lack of personal jurisdiction.

Transit was ordered into liquidation by an order of the Circuit Court of Cole County, Missouri, on December 3, 1985.

Except for the Maryland Guaranty Association, which is incorporated, all of the defendant insurance guaranty associations are unincorporated associations established by state legislation (fashioned after the so-called "Model Act," discussed *infra*), consisting of those insurers who underwrite risks in the state in which the guaranty association exists. There are uncontradicted affidavits on file with respect to each unincorporated association confirming that at least one New York insurer is a member of the association by virtue of the sale of policies in the state in which the association exists, and the payment of dues or charges to the association required to be paid under state law as a result of such sales. Plaintiff Rhulen Agency, Inc. is a New York corporation having its principal office at Monticello in this District.

Upon the agreement of counsel, the Court will consider the motion as directed to the proposed amended complaint found as Exhibit B attached to the brief of plaintiff, docketed June 6, 1989.

The proposed amended complaint seeks to sue each of the associations mentioned in its caption, some 26 in number, and also names as defendants "All of each of the above individual associations' members other than those members who at the date of commencement of this litigation had their place of incorporation and principal place of business in the State of New York."

We now consider the substance of the amended complaint. The complaint alleges that it seeks damages "for violation by the

Jacob Billig, Tepper, DuBois and Billig, Monticello, N.Y., for plaintiff.

Richard Spencer, Stryker, Tams & Dill, Newark, N.J., for all defendants except Maryland G.A.

Edward M. Cohen, Raskin & Rappaport, P.C., New York City, for Maryland G.A.

defendants of their statutory duties ... for breach of contract, and for breach of fiduciary duty in violation of constructive trust." (Paragraph 2). The amended complaint (paragraph 33) specifically disclaims an intention to seek judgment "against those member insurance companies of each defendant guaranty association, who at the time of the commencement of this action had their incorporation and [sic] principal place of business in the State of New York."

Viewing the amended complaint most favorably to plaintiff, it shows that it is an insurance agent or broker with customers throughout the country, that the various defendant guaranty associations are comprised of member insurance companies who are licensed to do business in the particular state in which the guaranty association exists, and that as a condition of doing business in that particular state, each insurance company is required to become a member of the guaranty association.

The purpose for which the guaranty associations are organized, pursuant to their respective state statutes, is to pay claims to resident insureds of insolvent member insurance companies, such as Transit. The members are assessed a percentage of their gross premiums to form a fund or pool from which the guaranty associations pay claims pursuant to their enabling statutes. Ordinarily such payment is made after the state court-appointed rehabilitators have exhausted the assets of the insolvent insurer available within the jurisdiction of the state, and it is pleaded that the member insurance companies of the guaranty associations have notice and knowledge by virtue of their membership that the guaranty associations will pay the claims of insolvent member insurance companies.

Plaintiff placed insurance with Transit for insureds located throughout the country. This insurance was largely related to equine mortality risks. Although not a general agent of Transit, Rhulen Agency did have certain claims management functions which it performed for Transit prior to its demise. Before and after the collapse of Transit, plaintiff advanced payment of claims to its customers insured by Transit, and obtained assignments from the customer-insureds of their rights against Transit and against the defendants in this action. The demand and refusal to pay is adequately pleaded, and plaintiff seeks recovery on various legal theories for the amounts which it advanced to its customers to which it had sold policies placed with Transit.

The first claim (paragraph 65) is based on negligent breach of statutory duty because the guaranty funds did not pay. The second claim alleges a breach of contract by Transit and further alleges that the insolvency of Transit "triggered a statutory mechanism which required the various Guaranty Fund defendants to meet the contractual obligations of the insolvent insurer" (complaint, paragraph 69). The third claim pleaded is for "breach of ... fiduciary duty in violation of the constructive trust." This claim is based on the theory that the pool held by a guaranty association to pay claims for policyholders of member insurers who have become insolvent is a constructive trust for the benefit of policyholders or claimants (complaint, paragraph 75), and that the guaranty associations have a fiduciary duty to manage this trust fund and use it to pay the claims of Transit policyholders.

Surely there is no basis for any tort jurisdiction in this case. We are concerned at most with a simple contract dispute between Transit and the insureds, and a possible statutory issue, if there is indeed an issue, as to whether these guaranty associations must pay.

### In Personam Jurisdiction

■ This Court is at a loss to perceive a legitimate basis to exercise *in personam* jurisdiction over these defendants in this District. It is, of course, plaintiff's burden to show such a basis. The defendants for the most part exist under statutory provisions derived from the "Post Assessment Property and Liability Insurance Guaranty Association Model Act," adopted by the National Association of Insurance Commis-

sioners. The various states have established different statutory versions of this Model Act. While the applicable statutes may vary considerably, both in format and in the local construction attributed to the specific words, the essential premise upon which all defendants operate is for our purposes identical. They provide statutory benefits to those holders of policies issued within the state by insurers which thereafter failed.

The guaranty associations have no privity of contract with Transit or with the named insureds. Their duty is statutory only. None of the contracts of insurance made by Transit, upon which plaintiff actually sues, were initially made with New York parties.

We are referred by Rule 4 Fed.R.Civ.P. to the New York Statutory Provisions which grant *in personam* jurisdiction to the New York courts over non-residents, and in particular, Section 302 of the New York C.P.L.R.

We find none of the provisions of this well-known statute applicable here. The guaranty associations did not transact business within the State of New York, and did not contract to supply goods or services in the State. None is present in this State to the extent of having subjected itself to the protection of the State for the purposes of transacting business, nor have any of them "purposely availed themselves of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws," which is the legal standard uniformly cited by New York courts dealing with such issues.

The only obligation which the guaranty associations have to the policyholders of the now defunct Transit is that it is "deemed the insurer" under the various enabling statutes. This does not comprise engaging in the business of insurance, and nothing in the Model Act or in any of the local state acts has been brought to our attention which would evidence any intent of these guaranty associations or the respective legislatures which created them to subject their operations to the long-arm jurisdiction of some other state.

We are doubtful that the courts of New York have any significant interest in the underlying litigation. The policies issued by Transit upon which suit is brought here were governed either by the laws of the state of issuance, Missouri or California, or the states in which the obligation was to be performed. All of these states are states other than New York. New York has no public interest in the interpretation or enforcement of the guaranty association laws of other states, designed solely to protect insureds in those respective states.

There is no question that plaintiff took these assignments in good faith in order to protect its own good will by upholding the legitimate interest which its customer-insureds had in the expectation that Transit would honor these claims. Rhulen also had a legitimate business interest as broker in paying the claims and accepting the assignments in order to protect itself from possible claims of negligence or breach of duty, which might be asserted by insureds when they found that their risks had been placed by Rhulen with a shaky insurer who later became insolvent. Guided by the hindsight which so often invades a lawsuit based on negligence, a trial jury might well find that Rhulen knew, or should have known, that Transit was, or was likely to become, insolvent when some of these policies were issued. In short, we do not find, as defendants assert on this motion, that Rhulen is a "mere volunteer" which accepted assignments solely for the purpose of engaging in litigation. However, the making or receipt of the assignments cannot be a basis for the exercise of in personam jurisdiction by New York.

*Subject Matter Jurisdiction*

Since this Court finds that it does not have, and cannot gain, *in personam* jurisdiction over the defendants, it is of doubtful benefit to consider subject matter jurisdiction. It would seem fairly obvious on the face of it that we have none. Movants do not cite the leading Second Circuit

98

case involving exercise of diversity jurisdiction over assigned claims, *Prudential Oil Corp. v. Phillips Petroleum Corp.*, 546 F.2d 469 (2d Cir.1976). That case grants full and literal enforcement to the provisions of 28 U.S.C. § 1359. Here, most, if not all, of Rhulen's assignors were citizens of the state in which the guaranty association against which they claim was organized. Diversity jurisdiction cannot be created by assignment.

Accordingly, we are not required to engage in any analysis of *Jaser v. New York Property Insurance Underwriting Association*, 815 F.2d 240 (2d Cir.1987), relied upon by plaintiff, which permitted a Texas insured to sue a New York unincorporated association in diversity simply by proceeding against all of the individual members of the association, except those which were incorporated in Texas. If the literal language of the *Jaser* opinion were followed to its logical conclusion, it would permit diversity litigation to be pursued against unincorporated associations which had only a single diverse member, by suing that member and leaving it to the member to bring all the rest of the members before the court by a third-party action for indemnity or contribution. Even the most fervent supporter of diversity jurisdiction would find it hard to swallow such an artificial procedure. This suggests that *Jaser* was either wrongly decided or will be held to its specific facts in future cases.

The action is dismissed as to all defendants without prejudice.

So Ordered.