**Katie Jean OGLESBY, et al.**

v.

**COOPER MANUFACTURING CORP., et al.**

**Civ. A. No. 86–3382.**

United States District Court,
E.D. Louisiana.

June 9, 1992.

See also 832 P.2d 834.

Kristi Ann Post, L. Thomas Lakin Law Offices, New Orleans, La., Dennis F. Nalick, Kenner, La., Lowell Thomas Lakin, Woodriver, Ill., for plaintiffs.

William Everard Wright, Jr., Judy Lynn Burnthorn, Deutsch, Kerrigan & Stiles, David Perez Banowetz, Jr., Exxon Co, USA, Corp. Div., John G. Gomila, Jr., Donna E. Powe, Michele Whitesell Crosby,

Jones, Walker, Waechter, Poitevent Canère & Denègre, et al., New Orleans, La., Michael Phillip Mentz, Christopher Kelly Lightfoot, Hailey, McNamara, et al., Metairie, La., for defendants.

Richard S. Vale, Virgil A. Lacy, III, Blue, Williams & Buckley, Metairie, La., for intervenor.

## SUPPLEMENTAL ORDER AND REASONS

ARCENEAUX, District Judge.

Defendant Oklahoma Property & Casualty Insurance Guaranty Association ("OIGA") filed a motion on May 14, 1992, for an expedited hearing on a motion to dismiss or, in the alternative, for summary judgment on the issue of subject matter jurisdiction. On May 20, 1992, Defendant Liberty Mutual Insurance Company ("Liberty Mutual") filed a similar motion on the issue of subject matter jurisdiction and also requested an expedited hearing. Having reviewed the memoranda in support, the opposition memoranda, and the applicable law, and having held a hearing on June 4, 1992, at which time the court denied both motions, the court now issues this order and reasons to supplement those oral reasons given at the time of such hearing.

## BACKGROUND

Plaintiff, Katie Jean Oglesby ("Oglesby"), commenced this action on August 4, 1986, on behalf of herself, her deceased husband's estate, and their two children.[1] (R. at 1.) The tortuous history of events leading up to Mr. Oglesby's death and this instant action with relatively simple facts begins over ten years ago. The court finds it proper and necessary to recite such history for the purpose of these present motions.[2]

Permian Engineering Corporation ("Permian") allegedly designed and manufactured a derrick sometime during the 1970s. In 1978, Cooper purchased this derrick from Permian, but either Permian or Cooper apparently sent it out to Worthington Oil Company prior to its return to Cooper. Upon the derrick's return, Cooper allegedly painted and repaired the Permian derrick and, further, mounted it on top of a truck. In 1980, Cooper sold this entire structure to Grosse Tete Well Service ("Grosse Tete"). Gross Tete apparently used the derrick structure without incident from 1980 until 1985.

Mr. Oglesby, the decedent, worked for Grosse Tete as a derrick man. On November 7, 1985, Oglesby sustained fatal injuries on a job at Shell Oil's plant in Norco, Louisiana. The decedent apparently fell approximately forty feet from the Permian/Cooper derrick structure when the upper portion of the rig collapsed.

Mrs. Oglesby, in the original complaint, alleged product liability claims against Cooper and Pemco, Inc. ("Pemco") for the wrongful death of her husband. On December 4, 1986, Pacific Marine Insurance Company ("Pacific Marine") intervened in this matter for worker's compensation benefits paid pursuant to Louisiana law.[3] Subsequently, Cooper formally appeared by answering the complaint on March 31, 1987, along with Allied Fidelity Insurance Company ("Allied Fidelity"), its insurer.[4]

1. Dennis F. Nalick, Esq., a lawyer from Kenner, Louisiana, initially represented Plaintiff in this matter. The court will frequently refer to counsel by name in this discussion as they have become as much a part of this tragic saga as the facts leading up to and allegedly causing Mr. Oglesby's death.

2. The court provides this history not only as an example of how some attorneys ignore and neglect the basic considerations that, historically, have permitted our legal system to function but also as an example of its own failings in docket management. More importantly, the court finds that this history provides strong support for the actions taken by it relative to the motions to dismiss.

3. The Louisiana Insurance Guaranty Association ("LIGA") eventually joined this suit on August 21, 1989. (R. at 166.) Pacific Marine apparently had been declared insolvent, and LIGA assumed payment of the workers' compensation benefits.

4. David P. Banowetz, Esq., of Baldwin & Haspel in New Orleans, Louisiana, signed the answer on behalf of Cooper and Allied Fidelity. Allied Fidelity joined this action as a party even though it had not been named in Plaintiff's complaint nor had it sought and had it been granted permission to intervene.

The answer filed by Cooper and Allied Fidelity denied Plaintiff's allegations of proper subject matter jurisdiction. (R. at 8.) Furthermore, Cooper alleged that it was a bankrupt corporation with its place of incorporation and principal place of business in the State of Texas. This answer further alleged that Allied Fidelity was a foreign insurer in liquidation and subject to a $150,000.00 statutory cap under Oklahoma's insurance guaranty act.[5]

The court held a scheduling conference on November 19, 1987, and set this matter for trial on June 27, 1988. (R. at 18.) On December 29th, the court granted a motion for Judy L. Burnthorn, Esq., of Baldwin & Haspel to be enrolled as co-counsel for Cooper and Allied Fidelity. (R. at 21.)

Plaintiff, through Mr. Nalick, subsequently filed a first amended complaint on March 15, 1988, naming Permian Engineering & Manufacturing Corporation as an additional defendant. (R. at 27.) On March 17, 1988, Cooper and Allied Fidelity answered the first amended complaint and again denied Plaintiff's allegations of subject matter jurisdiction. (R. at 28.) Permian also answered the first amended complaint on June 9, 1988, and raised liberative prescription as an affirmative defense. (R. at 39.)

The court held a status conference on June 15, 1988, and continued the trial set for June 27th. (R. at 41.) The court granted the continuance for several reasons: Cooper allegedly had gone completely bankrupt; Allied Fidelity was insolvent; the Plaintiff sought to add OIGA as a party-defendant in place of Allied Fidelity; and Permian allegedly had been dissolved and purportedly lacked legal capacity to be sued.[6]

Mrs. Oglesby, again through Mr. Nalick, filed a second amended complaint on June 20, 1988, naming OIGA as being responsible for any liability on any claim in a direct action against Allied Fidelity. (R. at 42.) Oglesby also named Liberty Mutual Insurance Company ("Liberty Mutual"), the insurer of Permian, in a direct action. Furthermore, this second amended complaint alleged Cooper to be a citizen of Oklahoma.

Liberty Mutual answered this second amended complaint on June 29, 1988, and asserted liberative prescription as an affirmative defense. On August 16th, the court granted an unopposed motion to dismiss Permian, Liberty Mutual's insured. (R. at 51.) On September 2, 1988, Ms. Burnthorn filed an answer to the second amended complaint on behalf of Cooper, Allied Fidelity, and OIGA.[7] (R. at 53.) In this answer, the Defendants contended that the Texas Property and Casualty Insurance Guaranty Association was an indispensable party, that subject matter jurisdiction did not exist, and that Liberty Mutual should indemnify or, in the alternative, should provide contribution to Cooper, Allied Fidelity, and OIGA.

The court thereafter held a second scheduling conference on October 12, 1988. (R. at 59.) At this conference, the court set June 19, 1989, for commencement of the trial. On October 20, 1988 the Plaintiff, through Mr. Nalick, filed a third amended complaint naming James T. Odiorne ("Odiorne"), the ancillary receiver for Allied Fidelity in Texas, as yet another defendant. (R. at 58.) All Defendants answered this third amended complaint, including Cooper, Allied Fidelity, and OIGA (through Ms. Burnthorn), which parties again denied the existence of subject matter jurisdiction. (R. at 63, 65.) On November 23rd, Odiorne

---

5. *See* Oklahoma Property and Casualty Insurance Guaranty Act, Okla.Stat. tit. 36, §§ 2001–2020 (1991).

6. Permian subsequently filed an amended answer and alleged that its officers had voluntarily dissolved Permian on December 11, 1986. (R. at 44.) The corporate officers recorded such dissolution with the Secretary of State for Texas on December 12, 1986.

7. A problem apparently existed over the proper party to serve on behalf of OIGA. (R. at 48, 49.) Furthermore, even after proper service, OIGA, through Ms. Burnthorn, requested an extension of time in which to answer. (R. at 52.) The problems with service and eventually a responsive pleading took place even though OIGA's counsel had participated in this suit on behalf of Cooper and Allied Fidelity since March 31, 1987.

filed a motion to dismiss in response to the third amended complaint. (R. at 64.)

Stephen S. Durish ("Durish") subsequently took Odiorne's place as ancillary receiver for Allied Fidelity and prosecuted the motion to dismiss. Because of Texas law governing insurance company receivership, this court found itself without subject matter jurisdiction to hear the claims against Durish. (R. at 94.) The court, therefore, granted the motion on April 19, 1989.[8]

Cooper, Allied Fidelity, and OIGA (through Gary Giepert, Esq., of Baldwin & Haspel) filed a motion for summary judgment on April 19, 1989, alleging that Cooper did not manufacture any of the allegedly defective parts and that Liberty Mutual should indemnify Cooper, Allied Fidelity, and OIGA. (R. at 108.) The Defendants noticed this motion for hearing on June 14, 1989, even though the pre-trial conference had been scheduled for June 1, 1989 and the trial had been set for June 19th. Furthermore, the court's standard scheduling order required motions to be filed and noticed for hearing more than thirty days prior to the trial date.[9]

The court held the pre-trial conference on June 1, 1989, as scheduled. (R. at 114.) During this conference, counsel for Cooper, Allied Fidelity, and OIGA raised the issue of whether OIGA offered coverage to both Cooper and Allied Fidelity and the extent thereof. These Defendants also addressed other issues in a pre-trial memorandum relative to the extent of coverage required by OIGA under the Oklahoma insurance guaranty act. (R. at 128.) Furthermore, on June 8th, Cooper, Allied Fidelity, and OIGA filed a motion for leave to file an amended cross-claim against Liberty Mutual, asserting for the first time that Cooper should be an additional insured under Liberty Mutual's policy. (R. at 123a, 131a.) Subse-

quently, the court yet again continued the trial in this matter. (R. at 140.)

The court held a preliminary pre-trial conference and set a third trial date for December 11, 1989, and again entered its standard scheduling order with respect to pre-trial matters. (R. at 154.) Also, OIGA had been ordered previously to bring any motions relative to contentions raised in its pre-trial memoranda. (R. at 143b.)

Cooper, Allied Fidelity, and OIGA thereafter filed a motion for summary judgment on July 11, 1989. (R. at 144.) In this motion, the Defendants sought to have Cooper and Allied Fidelity dismissed from the action. As to Cooper, counsel represented the following:

> Cooper filed bankruptcy in 1984. It is undisputed that Cooper had been dissolved by the Texas Secretary of State. All of Cooper's assets have been sold, and the proceeds from those assets have been distributed. There is one remaining liquidating trust, whose assets will be totally distributed within six months. Therefore, before there is a final judgment in this case, Cooper will no longer exist in any capacity. The corporation, itself, no longer exists, and its bankruptcy estate will be entirely liquidated.

> In order to "clean up" the pleadings and involve only the actual parties at interest, this Court should dismiss Cooper as a party in this action. To include Cooper can only cause confusion, and such confusion can be avoided if Cooper is dismissed.

(R. at 144.) Counsel further provided a copy of a certificate of Cooper's involuntary dissolution issued on July 27, 1988, by the Texas Secretary of State. (R. at 144.) As to Allied Fidelity, defense counsel provided an order of liquidation dated July 15, 1986, from an Indiana state court. (R. at 144.)

---

**8.** The court eventually granted a motion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, on June 26, 1989, and entered final judgment on July 17, 1989, as to this party. (R. at 146, 149.)

**9.** Pacific Marine and Plaintiff filed a cross motion for summary judgment on May 30, 1989.

(R. at 113.) This motion also did not comply with the court's scheduling order. The court eventually denied the Defendants' motion in a minute entry dated July 10, 1989. (R. at 143a.) The court, however, apparently never ruled on the motion filed by Pacific Marine and Plaintiff.

Liberty Mutual also filed a motion on July 11, 1989, to disqualify counsel for Cooper, Allied Fidelity, and OIGA. (R. at 147.) In support thereof, Liberty Mutual argued that the coverage issues raised for the first time by counsel for Cooper, Allied Fidelity, and OIGA in a pre-trial memorandum dated June 9, 1989, presented a conflict of interest. Plaintiff filed a memorandum in support of this motion, but counsel for Cooper, Allied Fidelity, and OIGA opposed it. (R. at 151, 153.)

Defendants Cooper, Allied Fidelity, and OIGA thereafter filed another motion for summary judgment on August 8, 1989. (R. at 162.) This motion sought a ruling by the court on legal issues relative to OIGA's coverage and the extent thereof. The court eventually set hearings on the motions for summary judgment, the motion to disqualify, and motions for sanctions filed by Plaintiff and Liberty Mutual. (R. at 176, 178, 186.)

The court held such hearings on October 18th and granted Defendants' motion for summary judgment as to Cooper and Allied Fidelity.[10] (R. at 186a.) In so doing, the court made specific findings of fact relative to Cooper including: (1) that a pending Chapter 7 proceeding existed; (2) that a necessary lifting of the bankruptcy stay had not been obtained as to Cooper; and, (3) that Cooper had been liquidated of all assets. (R. at 285.) The court further denied the Defendants' second motion for summary judgment relative to coverage issues, referred the motions for sanctions to the assigned magistrate judge, and dismissed as moot the motion to disqualify counsel.[11]

The court also specifically expressed concern over its subject matter jurisdiction during this hearing. (R. at 285.) While it focused on the issue of jurisdiction relative to the coverage issues raised by OIGA, the court also emphasized that it did not want this litigation to continue only to determine at a later date that no jurisdiction existed. Gary Giepert, Esq., counsel for Cooper, Allied Fidelity, and OIGA, represented to the court that no problems existed with respect to its subject matter jurisdiction.

Counsel and the court met again on November 20, 1989, in a hearing on a Liberty Mutual's request for an expedited hearing on the issue of liberative prescription. (R. at 204a.) The court denied Liberty Mutual's request and the motion for summary judgment on the issue of prescription because of its untimeliness.

The court also held a status conference on November 30, 1989, in lieu of the previously-scheduled pre-trial conference. (R. at 211.) For a third time, the court continued the trial of this matter because of inadequately developed facts and newly raised legal issues. Subsequently, the court

---

**10.** Prior to the hearing, counsel for Cooper, Allied, and OIGA also filed a supplemental memorandum in support of their motion for summary judgment. In this motion, counsel represents that,

> Cooper was incorporated in Texas on August 11, 1975, and has not been incorporated in any other state. On July 27, 1988, Cooper was dissolved by the Texas Secretary of State. Cooper filed for bankruptcy on July 31, 1984 in the United States Bankruptcy Court for the Northern District of Oklahoma, in the matter entitled *In re Cooper Manufacturing Corporation*, Case No. 84–01061. All of the assets of Cooper have been sold and the proceeds have been distributed to creditors. One liquidating trust remains in the Cooper bankruptcy estate, and it is anticipated that the money will be distributed from this trust to creditors by January 1990, at which time the bankruptcy estate of Cooper will have no assets.
>
> No proof of claim on behalf of Mr. or Mrs. Oglesby or their children has been filed in the

Cooper Manufacturing Corporation bankruptcy proceeding, and the cut off date for filing a proof of claim in the Cooper bankruptcy proceeding has long since past.

(R. at 181.) In this memorandum, counsel never mentions the type of proceeding taking place in the federal bankruptcy court. These Defendants, however, go on to say that any Texas law allowing a corporation to continue in existence for the purpose of suit must be pre-empted by federal bankruptcy law.

**11.** The minutes from the October 18th hearing indicate that the court denied the motion for sanctions rather than these motions being referred. Magistrate Judge Ronald A. Fonseca, however, eventually denied the motions for sanctions under Rule 11. (R. at 217.) In his order and reasons, the magistrate judge found such sanctions to be improper because Rule 11 did not contemplate sanctions for the "timeliness" of raising a defense.

granted a motion on March 30, 1990, by Plaintiff to formally substitute Kristi Post, Esq., as Plaintiff's present counsel of record. (R. at 220.)

Counsel also met with the court on April 25, 1990, to select a new trial date of April 1, 1991. (R. at 222.) At such time, the court again entered its standard scheduling order for pre-trial motions and other matters.

Plaintiff next filed a motion on January 14, 1991, relative to the issues of the Oklahoma insurance guaranty act's statutory damages cap and of OIGA's entitlement to credits for workers' compensation benefits and Liberty Mutual's liability for damages. (R. at 225.) OIGA filed an opposition to this motion on January 29, 1991. (R. at 229.) OIGA further filed a motion on January 30, 1991, for certification of the issues raised by Plaintiff to the Supreme Court of Oklahoma. (R. at 230.)

The court, in a memorandum and order dated March 19th, granted OIGA's motion for certification, denied the Plaintiff's motion for summary judgment, and continued the trial of this matter for a fourth time. (R. at 247.) In so doing, the court found that the Oklahoma courts had provided no guidance as of that date on the issues presented concerning the extent and nature of OIGA coverage. Thus, the court granted the motion for certification rather than explore the uncharted territory of another state's laws.

The court and counsel subsequently worked toward developing an appropriate certification order. On June 10, 1991, the court certified questions to the Supreme Court of Oklahoma. (R. at 251.) In the meantime, the court granted a request by counsel to schedule a new trial date pending return of the certified questions. (R. at 251, 252.) Thereafter, counsel and the court selected a new trial date of June 22, 1992, and the court entered the standard scheduling order, which again required that dispositive motions be filed to allow a least thirty days prior to the trial date for hearing thereon. (R. at 258.)

The Supreme Court of Oklahoma answered this court's certified questions on May 7, 1992.[12] (R. at 261.) On May 15, 1992, OIGA filed a request for an expedited hearing on the present motion to dismiss or, in the alternative, for summary judgment on the issue of subject matter jurisdiction. (R. at 268.) Liberty Mutual also filed a similar motion on May 20, 1992, and based its arguments on somewhat different arguments. (R. at 272.) Plaintiff filed timely oppositions to both motions.[13] Furthermore, the parties timely complied with this court's orders relative to reply memoranda.[14] The court, therefore, now turns to the issues at hand.

## DISCUSSION

The court, as noted above, previously denied both motions filed by OIGA and Liberty Mutual to dismiss or, in the alternative, for summary judgment. This discussion addresses both motions and provides supplemental reasons for the decisions of the court.

### I. *OIGA's Motion to Dismiss*

OIGA essentially contends that, because its membership included four insurance companies with Louisiana citizenship in 1986 and 1988, the court should grant the motion to dismiss for lack of diversity from the Plaintiff, a Louisiana citizen. Plaintiff confusingly concurs with the Defendant's

---

**12.** *See Oglesby v. Liberty Mutual Ins. Co.,* 832 P.2d 834, (Okla.1992).

**13.** Plaintiff also filed a motion for sanctions on May 22, 1992. (R. at 275.) OIGA filed a cross motion for sanctions on May 27, 1992. (R. at 288.) Both motions have been noted by the court but will not be heard and decided prior to trial or other disposition of this matter.

**14.** The court, however, notes that it rejected a supplemental memorandum filed by OIGA one day prior to the hearing scheduled for June 4th. This memorandum addressed the Cooper bankruptcy issue and the possible re-instatement of this party. In doing so, the court found it to be untimely and past any deadlines set by the court. Furthermore, upon a review of the memorandum, the court found it to be replete with factual misstatements and inapplicable case law. Thus, it provided no additional guidance to the court in this matter.

position to an extent but offers the court at least two grounds upon which to deny this motion. The court, upon a careful and thorough review of the facts in this case and the relevant case law, finds OIGA's motion to be without merit.

### A. *Diversity, Direct Actions, and Unincorporated Associations ...*

■ Defendant OIGA, in support of its motion, cites the court to *Temple Drilling Co. v. Louisiana Insurance Guaranty Association,* 946 F.2d 390 (5th Cir.1991) [hereinafter *Temple Drilling* ].[15] The court, however, finds the Defendant's reliance on *Temple Drilling* to be misplaced in the context of this action.

*Temple Drilling* involved an action in contract by the owner of drilling rigs against the Louisiana Insurance Guaranty Association for indemnification. The liability insurers of Temple Drilling Company ("Temple Drilling") apparently had been declared insolvent during the pendency of several personal injury lawsuits. *Id.* at 391. Temple Drilling, therefore, undertook the defense of these actions itself and paid judgments as to some claimants and entered settlements as to other claimants. Thereafter, Temple Drilling sought to recover from LIGA based on the association's obligation to assume the liabilities of the insolvent insurer.

The Fifth Circuit, in dismissing Temple Drilling's contractual action against LIGA, relied on *Rhulen Agency, Inc. v. Alabama Insurance Guaranty Association,* 896 F.2d 674 (2d Cir.1990), and found diversity jurisdiction to be lacking. *Id.* at 394. In doing so, the court held that, for diversity purposes, LIGA must be considered a citizen of each of its members' states. *Id.* Thus, as construed by OIGA, this rule purportedly mandates the dismissal of it from this suit.[16] The court, however, disagrees with OIGA's application of *Temple Drilling* to the instant action.

■ The court, in addressing OIGA's motion and the *Temple Drilling* case, does not dispute that, in generally assessing the citizenship of unincorporated associations,

---

**15.** The court recites the lengthy facts above to emphasize the protracted course of these proceedings and its chagrin that OIGA waited until the eve of the fifth trial setting to raise lack of subject matter jurisdiction through its present motion. *Temple Drilling* clearly did not represent the first instance where courts have looked to the membership of unincorporated associations for the purpose of diversity jurisdiction.

The U.S. Court of Appeals for the Second Circuit specifically addressed such issue in *Rhulen Agency, Inc. v. Alabama Insurance Guaranty Association,* 896 F.2d 674 (2d Cir.1990) [hereinafter *Rhulen* ]. In *Rhulen,* the court specifically noted that nearly 100 years of jurisprudence had held the citizenship of unincorporated associations to be that of such association's members. *Id.* at 677. *See generally* Annotation, *Determination of Citizenship of Unincorporated Associations, for Federal Diversity of Citizenship Purposes, in Actions By or Against Such Associations,* 14 A.L.R.Fed. 849 (1973 & Supp.1991) (addressing unincorporated insurance associations). OIGA not only participated in *Rhulen* as a party-defendant but filed an affidavit in the district court proceedings relative to subject matter jurisdiction and its citizenship. *See Rhulen,* 896 F.2d at 676; *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 715 F.Supp. 94 (S.D.N.Y.1989), *aff'd,* 896 F.2d 674 (2d Cir.1990). OIGA's counsel conceded such fact to the court during the hearing on the present motion to dismiss.

The court, however, recognizes that the burden of establishing diversity jurisdiction clearly rests upon the party asserting it. *Getty Oil Corp. v. Insurance Co. of N. Am.,* 841 F.2d 1254, 1259 (5th Cir.1988). Federal courts, however, also must guard against improper assertion of their jurisdiction. This court sought to raise such issue during the hearing before it on October 18, 1989, and counsel for OIGA assured the court that subject matter jurisdiction existed and, furthermore, asserted cross claims against Liberty Mutual making affirmative allegations of proper jurisdiction.

The court, upon considering the actions of defense counsel and OIGA in this matter, finds itself faced with some of the most egregious delaying tactics ever asserted by a party and attorneys before it. These actions, however, wil' be addressed more fully and dealt with in due course upon a hearing and the taking of evidence relative to the pending motions for sanctions. At this point, the court must address the serious nature of the jurisdictional issues before it.

**16.** OIGA, in its motion, submits certificates of authority and records of OIGA purporting to show that at least four members of its organization hold Louisiana citizenship. Plaintiff has not disputed the evidence provided to the court and, therefore, it must construe such facts as admitted.

a court must look to the association's individual members.[17] A general statutory provision and the interpretation thereof, however, must yield where a more specific statutory provision governs the outcome. In this instance, the court finds two more specific statutory provisions distinguishing this case from *Temple Drilling* and permitting the exercise of diversity jurisdiction.

Plaintiff, in her third amended complaint, based allegations of diversity jurisdiction on Louisiana's Direct Action Statute and, presumably, the federal statute governing such actions.[18] *See* La.Rev.Stat.Ann. § 22:655 (West 1978); 28 U.S.C. § 1332(c) (1982). Specifically, section 1332 of Title 28, United States Code (as it existed when Plaintiff brought this action), contained two provisions relevant to this discussion. *See* 28 U.S.C. § 1332 (1982). In 1986, section 1332(a) addressed diversity jurisdiction in general (as it still does today). Section 1332(c) contained the 1964 amendment pertaining to direct actions against liability insurers.[19]

■ Congress enacted the direct action provision of section 1332(c) in response to the increased number of federal court filings in states with direct action statutes like Louisiana. *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 299, 107 L.Ed.2d 223 (1989); *see* S.Rep. No. 1308, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 2778, 2779. In doing so, it sought to restrict suits in federal courts against insurers where the addition of the insured to the action would have destroyed diversity jurisdiction. *See Northbrook Nat'l Ins. Co. v. Brewer*, 854 F.2d 742, 743 (5th Cir.1988). This court, therefore, must ascertain whether section 1332(c) should govern the Plaintiff's action herein against OIGA or whether it should look to the general provisions governing diversity jurisdiction.

Such a determination requires the court to engage in an analysis relative to whether Plaintiff's action constitutes a direct action against OIGA based in tort or sounds in some other basis of liability. *See Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185 (5th Cir.1988). *See generally* 32A Am. Jur.2d *Federal Practice and Procedure* § 1391 (1982 & Supp.1992) (discussing what constitutes direct action); Annotation, *What Constitutes "Direct Action" Within*

---

**17.** The court assumes that OIGA meets the requisites of an unincorporated association because no evidence has been provided to contradict such assertion. Section 2005 of Oklahoma's Property and Casualty Insurance Guaranty Association Act, however, specifically refers to OIGA as a "nonprofit organization" and never refers to it as an unincorporated association. *See* Okla.Stat. tit. 36, § 2005 (1991). Nevertheless, the court will accept OIGA's contention as true even though its counsel has not been punctilious in adhering to the facts in the past.

**18.** Plaintiff generically refers to section 1332 as the appropriate basis of jurisdiction. For the purposes of this discussion, the court assumes that Plaintiff based her allegations of jurisdiction on section 1332(c) because she clearly identifies this suit as a direct action against Cooper's insurer. Furthermore, OIGA has submitted no argument or evidence to the court for it to presume otherwise.

**19.** Section 1332 stated at the time Plaintiff filed this suit, in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;
(2) citizens of a State, and foreign states or citizens or subjects thereof; and,
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties.

. . . .

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further,* That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

28 U.S.C. §§ 1332(a), 1332(c) (1982), *as amended by* Act of Oct. 21, 1976. The 1988 amendments to this statute increased the jurisdictional minimum to $50,000. Pub.L. No. 100–702, 102 Stat. 4642 (1988) (codified as amended at 28 U.S.C. § 1332 (1988)). The 1988 amendments, however, only applied to suits brought after May 18, 1989.

*Proviso to 28 USCS § 1332(c) That for Purposes of Diversity Jurisdiction in Direct Action Against Liability Insurer in Which Insured Is Not Joined as Party Defendant, Insurer Shall Be Deemed Citizen of State of Which Insured Is Citizen,* 13 A.L.R.Fed. 398 (1972 & Supp.1991) (construing federal direct action provision). The parties to this action have only inferentially touched upon this issue. Furthermore, the court's own research has not unearthed an abundance of statutory and jurisprudential law addressing the situation at hand.

This dearth of legal guidance must not preclude a court from ruling, and, in so doing, this court finds that section 1332(c) must govern Plaintiff's action against OIGA. The court, in supporting such decision, notes that Louisiana's Direct Action Statute seeks to insure that parties retain a right of action against a tortfeasor's insurer even where the insured has been declared insolvent or bankrupt. *See* La.Rev. Stat.Ann. § 22:655 (West 1973). In this action, the court obviously must extend such protection one step further by holding that a direct right of action exists against OIGA as the guarantor of claims against Allied Fidelity. But, by doing so, no violation of any relevant statutes or jurisprudence occurs relative to exercise of jurisdiction or to the regulation of insurance.

█ The next tenet of the court's analysis involves its application of section 1332(c) to this action where it has found a direct right of action to exist. As noted above, the citizenship of an insurer, whether incorporated or unincorporated, depends upon its place of incorporation and its principal place of business.[20] Here, OIGA has not been incorporated, but the court finds its principal place of business as Oklahoma to be uncontested. Therefore, for the purpose of diversity under section 1332(c), OIGA assumes the citizenship of Cooper (that is, Texas and Oklahoma), Allied Fidelity (that is, Texas), and of its own state (that is, Oklahoma). Because Plaintiff holds Louisiana citizenship, the addition of OIGA has not destroyed diversity jurisdiction—notwithstanding OIGA's belated arguments to the contrary.

█ The court finds further support for this proposition by looking to the statutes of Oklahoma. The Oklahoma Property and Casualty Insurance Guaranty Association Act states that OIGA shall "[b]e deemed the insurer to the extent of the obligations on covered claims and to that extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent...." Okla.Stat.tit. 36, § 2007A(2) (1991). OIGA relied upon such provision in a memorandum dated October 30, 1989, where it stated that it "would step into the shoes of the insolvent insurer and be amenable to the jurisdiction of any court where there was proper jurisdiction and venue with regard to the insolvent insurance company."[21] (R. at 192.) Thus, the court finds it proper that, where an unincorporated insurance guaranty association assumes the jurisdictional rights and liabilities of its insolvent insurer, the citizenship of such association in a direct

---

**20.** The court notes that, in some circumstances, state law determined the citizenship of a party and its capacity to be sued even in federal proceedings. *See Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933). But, the court also recognizes that the U.S. Supreme Court effectively put such contention to rest in *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), where the Court held that, for purposes of diversity jurisdiction, the citizenship of artificial entities (except for corporations) must be that of its individual members. *Id.; see Temple Drilling,* 946 F.2d at 393. The court, however, finds *Carden* to be inapposite as that decision did not address the citizenship of an unincorporated insurance guaranty association stepping into the shoes of an insolvent insurer during the pendency of a tort-based direct action.

**21.** The court further notes with interest that, in the same memorandum, OIGA cited the court to *Minnesota Insurance Guaranty Association v. Kansas Insurance Guaranty Association,* No. 86–2347, 1987 U.S.Dist. LEXIS 5130 (D.Kan. Apr. 14, 1987). In that case, the federal district court specifically stated that, "The citizenship of an unincorporated association such as MIGA is considered to be that of each member." *Id.* at *3. Yet, OIGA waited until 1992 to raise the issue of subject matter jurisdiction through its present motion.

action based in tort should be that of its insolvent insurer.

While *Temple Drilling* clearly stands on solid ground, it does not apply herein to divest the court of diversity jurisdiction in a direct action such as this one. Based on federal and state law provisions as well as the case law interpreting them (or lack thereof), this court may properly exercise diversity jurisdiction under the particular facts before it. But, the court's findings and legal conclusions also support the exercise of jurisdiction on other grounds as well.

### B. *Diversity and the Time of Filing Suit*

The second ground for retaining jurisdiction over this matter involves the relevant time for assessing the diversity of the parties. No party addressed this issue in briefing, but, during oral argument, counsel for OIGA acknowledged the case law cited by the court even though she had not cited it in her memoranda.

The United States Supreme Court in *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, —— U.S. ——, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) [hereinafter *Freeport–McMoRan*], recently re-affirmed the long-standing principle that, "Diversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action." *Id.*, 111 S.Ct. at 860. In *Freeport–McMoRan*, the Court ruled that the district court erred in dismissing the suit for lack of subject matter jurisdiction where the substitution or addition (post-filing of the complaint) of a limited partnership as plaintiff destroyed diversity under

the rule announced in *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). Here, the court finds that *Freeport–McMoran* and the rule announced therein fits this case squarely.

Plaintiff filed the instant action on August 4, 1986, naming Cooper and Pemco as Defendants and alleged diversity jurisdiction. On August 11, 1975, Cooper was incorporated in the State of Texas and the record here (as well as information obtained about Cooper from periodicals on NEXIS—a computerized research service) indicates Oklahoma as Cooper's principal place of business.[22] Plaintiff subsequently agreed to dismiss Pemco when her counsel presumably learned that this Defendant was not a proper party. Pemco, however, allegedly had Texas citizenship as well and no party has contested such assertion.

 The real issue is whether Cooper represented a jural entity at the time Plaintiff filed suit against the company. Defendant OIGA ostensibly argues that Cooper's bankruptcy filed under Chapter 11 on July 31, 1984, made it an improper party for suit. OIGA, however, fails to recognize that Cooper still existed as a jural entity in 1986.

The court, in granting a motion for summary judgment as to Cooper on October 18, 1989, ruled that the following three grounds weighed in favor of the motion brought by OIGA's present attorneys: (1) the pending "Chapter 7" proceeding at the time the Plaintiff filed the complaint; (2) the fact that the stay had never been lifted; and (3) the bankruptcy-completed liquidation of Cooper at that time.[23] For the

---

22. The parties stipulated in a previous pre-trial order to Cooper's place of incorporation as having been Texas and its principal place of business as having been Oklahoma. The court further notes that an article on Cooper retrieved from NEXIS reported that, as late as September 1, 1986, this company had participated in the design of rigs manufactured by Allied Products Co. of Chicago, Illinois, for an Egyptian oil company. *Drilling-production,* Oil & Gas Journal, Sept. 1, 1986, at 32. Furthermore, other articles indicate that, in 1985, Allied Products Co. purchased Cooper's inventories and accounts receivable but not its plants, machinery, or equipment. *See Allied Products in 2 Deals,* Chicago Tribune, July 17, 1985, § C, at 1. These

newspaper articles provide the court with evidence of OIGA's misstatements relative to Cooper's status. As noted previously, OIGA's counsel represented to the court on several occasions that Cooper had liquidated all assets.

23. The court also noted at the hearing that the Secretary of State in Texas ordered on July 27, 1988, that Cooper be dissolved as a corporation for failure to maintain a registered agent. Furthermore, the Secretary of State in Oklahoma suspended Cooper on February 20, 1987, for failure to pay franchise taxes. The court, however, did not rely on these facts in rendering its ruling.

reasons below, the court must vacate this order as being clearly erroneous.

Cooper instituted a Chapter 11 (not Chapter 7) proceeding on July 31, 1984, and this proceeding remains pending in the U.S. Bankruptcy Court for the Northern District of Oklahoma. Gary Giepert, OIGA's former counsel from Baldwin & Haspel, represented in a memorandum to the court on Cooper's bankruptcy that, "All of the assets of Cooper have been sold and the proceeds have been distributed to creditors. One liquidating trust remains in the Cooper bankruptcy estate, and it is anticipated that the money will be distributed from this trust to creditors by January 1990, at which time the bankruptcy estate of Cooper will have no assets." (R. at 181). Counsel did not mention what specific type of proceeding had been commenced in the bankruptcy court. The wording of OIGA's memorandum and Mr. Giepert's argument, however, led this court to the erroneous conclusion that a liquidation or, in other words, a Chapter 7 proceeding had been instituted.

■ Furthermore, at the time Plaintiff filed this suit, the stay order in that proceeding did not apply to causes of action such as this one, which arose *after* the filing of the debtor's petition. *See* 11 U.S.C. § 362(a) (1988); *see* 2 Daniel R. Cowans, *Bankruptcy Law and Practice* § 11.4, at 326 (1989 & Supp.1991). In *In re Continental Air Lines, Inc.*, 61 B.R. 758 (S.D.Tex.1986), the district court engaged in a lengthy discussion of section 362(a) and found likewise—especially addressing a suit commenced after filing a Chapter 11 petition was not to be construed as a barred action against the debtor's property. *Id.* at 775–77; *see United States v. IN-SLAW, Inc.*, 932 F.2d 1467 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Avellino & Bienes v. M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). This is particularly so in an instance such as this one where the plaintiff's action is directed towards and is essentially against the liability insurer of the defendant. Thus, contrary to any assertions otherwise, the stay order issued in Cooper's bankruptcy proceedings had no relevancy to these proceedings.[24]

■ The representation that Cooper had been liquidated also must be found to be clearly erroneous. While Cooper may not have controlled assets for the Plaintiff to collect against, the estate existed then and continues to exist now as a jural entity. Furthermore, as evidenced by the continuing Chapter 11 proceedings, some funds or other assets must remain in the estate. Therefore, the court's reliance on OIGA's representation that Cooper had been completely liquidated was erroneous.

■ OIGA also has orally indicated to the court that, at the time Plaintiff filed suit, Cooper could be effectively served only through its trustee. This argument,

---

**24.** OIGA's counsel also previously informed the court that Plaintiff never filed a proof of claim in the Cooper bankruptcy proceeding. This argument also fails to have any relevancy as to whether Cooper was a jural entity at the time of this suit's commencement. Furthermore, no bankruptcy rule or law cited by OIGA or found by the court requires a party to file such a claim for a contingent debt that arises post-petition.

The bankruptcy code states that a "claim" represents a right to payment and a "creditor" holds "a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §§ 101(4)(A), 101(9)(A) (1988). *See generally* W. Homer Drake Jr., *Bankruptcy Practice* § 7.01 (1991) (discussing proof of claim requirement). A creditor need not even file a proof of claim but, obviously, such creditor will not share in a distribution of the estate. In addition, the bankruptcy code indicates a third party liable to a creditor may file a proof claim on behalf of the creditor. *See* 11 U.S.C. § 501(b) (1988). Defendant OIGA, however, not surprisingly fails to present such law to the court.

This law, however, leads the court to the following two conclusions: (1) nothing required the Plaintiff to file a claim in Cooper's bankruptcy to institute suit against it as a jural entity—albeit the only method of collecting from Cooper as such at this point would appear to be through the Chapter 11 bankruptcy trustee; and (2) OIGA could arguably have filed a proof of claim on behalf of the Plaintiff. Thus, as noted above, the court finds the Defendant's arguments in this regard to be specious at best.

however, ignores the fact that Cooper and Allied Fidelity had appeared in this case by answering the Plaintiff's complaint.[25] While it is a truism that jural entity whose existence has been terminated cannot respond to a suit commenced against it, a corporation incorporated in Texas and involuntarily declared insolvent continues to exist for purposes of suit and may be sued for three years after such insolvency. *See* Tex.Rev.Civ.Stat.Ann.Bus.Corp. Act, art. 7.12 (West 1980 & Supp.1992). Therefore, because Texas' Secretary of State did not issue a certificate of insolvency as to Cooper until July 27, 1988, it existed as a jural entity until three years later. Thus, Plaintiff clearly filed a timely suit against Cooper, and the court further finds OIGA's previous arguments relative to the preemption of federal bankruptcy laws and the federal bankruptcy court's exclusive jurisdiction to be of no consequence.

The court, therefore, may look to Cooper as a properly-named and sued jural entity at the time Plaintiff commenced this action. As such, because no adverse party held the same citizenship, diversity among the parties clearly existed.

■ The analysis, however, cannot end there. An exception to the principle governing the relevant time for assessing diversity requires the determination of whether a substituted or additional party was an indispensable one at the time of the action's commencement. In *Whalen v. Carter*, 954 F.2d 1087 (5th Cir.1992), the Fifth Circuit noted the Supreme Court's acknowledgment of such exception in *Freeport–McMoran* and ruled a partnership in commendam to be an indispensable party in a suit involving some of its limited part-

ners. *Id.* at 1096–97. The court, therefore, found subject matter jurisdiction to be lacking but remanded for a finding of whether supplemental jurisdiction could be exercised.

■ The more important issue at hand, therefore, is whether OIGA should have been named in the original complaint. Rule 19 of the Federal Rules of Civil Procedure governs indispensable parties and mandates that a party should be deemed "indispensable" if the court cannot proceed "in equity and good conscience" without such party. Fed.R.Civ.P. 19(b). In *Whalen*, the Fifth Circuit noted that Rule 19(b) offers the following four factors to be considered: "(1) to what extent a judgment rendered in the party's absence might be prejudicial to that party or others in the lawsuit; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the party cannot be joined." 954 F.2d at 1096. Under these factors, the court finds OIGA was not an indispensable party at the time Plaintiff commenced the action.

The court first notes that, under the circumstances here, no prejudice would result to any party from a failure to join OIGA in this action. OIGA became a party to this suit as the result of Allied Fidelity's insolvency and, under Oklahoma law, assumed all the rights and liabilities of Allied Fidelity. As such, the applicable statutes and case law would have required OIGA to defend Cooper and its insurer whether Plaintiff named OIGA or failed to do so.[26]

---

**25.** As observed earlier in this opinion, Allied answered even though the Plaintiff had not named Cooper's insurer in the original complaint.

**26.** The court also notes that, if OIGA should be deemed to have been indispensable at the time of filing suit, an alternative procedure apparently exists to retain jurisdiction. The court has chosen not to employ such procedure because of the impending trial but, if necessary on remand, it will not hesitate to do so.

The court specifically refers to the cases of *Tuck v. United Services Automobile Association,*

859 F.2d 842 (10th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989), and *Jaser v. New York Property Insurance Underwriting Association,* 815 F.2d 240 (2d Cir.1987). In these cases, two federal appellate courts indicated that, if a plaintiff sought to dismiss an unincorporated association as an entity and only name its diverse members, the want of subject matter jurisdiction due to lack of diversity would be cured. *Tuck,* 859 F.2d at 845; *Jaser,* 815 F.2d at 240; *Tuck v. United Servs. Auto. Ass'n,* 732 F.Supp. 100 (N.D.Okla.1989). *But cf. Rhulen Agency, Inc. v.*

In fact, OIGA's counsel appeared on behalf of Cooper and Allied Fidelity in the first instance. Therefore, the court finds no prejudice would have resulted from an absence of OIGA as a named party in this action.

The second and third factors relative to OIGA's status as an indispensable party appear irrelevant. OIGA presumably has conceded that it owes coverage to Cooper save for its arguments that Permian named Cooper as an additional assured under its policy with Liberty Mutual. Thus, unless Cooper is an additional insured under Liberty Mutual's policy, OIGA would be obligated to Plaintiff for any judgment rendered against Cooper and not recoverable from Liberty Mutual. No protective relief appears warranted or necessary and such judgment will be adequate.

The final factor has been conceded by Plaintiff. In fact, Plaintiff argues that the court should vacate its order granting summary judgment as to Cooper. Plaintiff's counsel apparently believes that an adequate remedy may be had by a judgment against Cooper rather than OIGA because of the latter's duty to defend and the coverage the association affords. Therefore, this factor also militates against a finding of OIGA's indispensability as a party at the time of filing.

OIGA, therefore, is not, and at the time of filing was not, an indispensable party for purposes of this suit. In fact, OIGA did not appear in the case until September 2, 1988. Until such time, a vigorous defense had been waged on Cooper's behalf.

The court, therefore, finds it proper to look to the time of the complaint's filing to test its diversity jurisdiction. In this regard, the rule governing the relevant time for assessing diversity jurisdiction, as reaffirmed by the Supreme Court in *Free-*

*port–McMoran,* fits this case like the proverbial glove. As such, the court finds such rule to be a second strong ground in favor of exercising subject matter jurisdiction.

### C. *The Interests of Justice*

■ Plaintiff, in her supplemental memorandum, directs this court's attention to *Newport Ltd. v. Sears, Roebuck & Co.,* 941 F.2d 302 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992). In the court's view, *Newport Limited* would alone provide sufficient legal support to retain jurisdiction notwithstanding the court's reliance on the findings made above.

The Fifth Circuit in *Newport Limited* instructed this very judge that it was an abuse of discretion to dismiss a suit pending for a number of years—even though no jurisdiction pursuant to a federal statute or diversity any longer existed. In the court's view, this action presents a situation even more egregious than *Newport Limited.* This suit has been pending for six years and includes ten volumes of record with over 270 documents. The Supreme Court of Oklahoma has responded to certified questions. Counsel and the court have expended an enormous amount of time on this matter.

Now, on the eve of the fifth trial setting, Defendant OIGA, contends that no subject matter jurisdiction ever existed in this court. This same Defendant filed a motion upon which this court relied for certification to the Oklahoma Supreme Court and upon which that state high court relied to plow new legal ground. The court, even assuming arguendo that OIGA's assertions are true with respect to jurisdiction, finds the continued exercise of jurisdiction by it to be proper.

*Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 677–78 (2d Cir.1990) (plaintiff refused to dismiss insurance guaranty associations as entities resulting in final dismissal). In fact, the district court in *Tuck* used such procedure to retain jurisdiction upon remand of the action and after judgment had been entered.

The court, as an aside, also finds interesting language from the U.S. Court of Appeals for the

Tenth Circuit in *Tuck* relative to sanctions for raising subject matter jurisdiction at a late stage of litigation and, furthermore, its interpretation of a federal direct action. *See Tuck,* 859 F.2d at 846–47. This language tends to lead the court to the conclusion that sanctions may well be warranted in this instance and that the reasoning used by the court to retain jurisdiction under section 1332(c) rests on solid ground.

The court recognizes that subject matter jurisdiction may not be conferred nor manufactured. In this instance, the court finds no evidence of any such conduct having taken place. Plaintiff, in good faith, instituted a wrongful death action for the tragic death of her husband nearly seven years ago. The court is repelled by conduct that smacks of manipulation of it and other counsel through the efforts of OIGA's counsel. For this reason alone, the court believes it is warranted in refusing to allow such conduct to divest it of jurisdiction; *Newport Limited* is the salve that heals the wounds of OIGA's thrust to now avoid the jurisdiction of this court after repeatedly invoking it to suit its own purposes.

## II. *Liberty Mutual's Motion to Dismiss*

Liberty Mutual also moved the court for dismissal based on lack of diversity and, in addition, prescription. First, this Defendant contended that, because LIGA intervened in this matter as a party-plaintiff, complete diversity has been destroyed because Liberty Mutual is a member of LIGA.[27] Next, this Defendant argued that, even if the court should find jurisdiction to be proper, Plaintiff failed to timely file her suit against Permian or Liberty Mutual. In support, Liberty Mutual refers the court to Louisiana law providing for no interruption of prescription where suit has not been timely filed in a court of competent jurisdiction.

Oglesby timely opposed Liberty Mutual's motion to dismiss. Plaintiff notes that section 1367 does not apply and, therefore, the court may exercise ancillary jurisdiction over the intervention. Oglesby also argues that the suit initiated against Cooper interrupted prescription against Liberty Mutual and its insured, Permian.

The court finds Liberty Mutual's motion to be devoid of merit. First, the court's ancillary jurisdiction clearly permits it to exercise jurisdiction over the intervention—even if LIGA and Liberty Mutual do not represent diverse parties. Second, Liberty Mutual's claims of liberative prescription fail to persuade the court.

 The exercise of a federal court's ancillary jurisdiction in cases filed prior to 1990 hinges on whether the intervenor's claim may be asserted of right. Rule 24 of the Federal Rules of Civil Procedure governs interventions of right. In particular, Rule 24(a) states that,

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). The court, therefore, must look to whether the claim of LIGA should be considered one of right or permissive under Rule 24.

 Pacific Marine and LIGA allegedly paid workers' compensation benefits pursuant to Louisiana's Workers' Compensation Law. *See* La.Rev.Stat.Ann. §§ 23:1021–23:1379 (West 1985 & Supp.1992). The Louisiana statutes provide Pacific Marine and LIGA with a right to intervene in this matter. *Id.* §§ 23:1101–23:1103. Thus, pursuant to Rule 24(b), the court finds the intervention herein to be as of right. Thus, it may exercise ancillary jurisdiction over such intervention without diversity between the intervenor LIGA and the Defendant Liberty Mutual.

 Liberty Mutual also seeks dismissal based on the ground of liberative prescription arguing that, if the court finds itself to be without competent jurisdiction as to OIGA, then Plaintiff's filing of the

---

**27.** Liberty Mutual first supported this argument by relying on section 1367 of Title 28, United States Code, as amended in 1990. The court, however, ordered further briefing from the parties on whether this section should be applied retroactively or prospectively. Liberty Mutual conceded that the statute does not apply by its own terms, but confusingly seeks to regroup and argue that a party may not intervene where a proper suit does not exist (apparently referring to OIGA's late-filed allegations concerning subject matter jurisdiction).

suit did not interrupt prescription against Liberty Mutual. La.C.C. art. 3462. The court, however, has ruled above that the exercise of jurisdiction existed at the time Plaintiff commenced this suit and continues to exist. Thus, by suing Cooper, the Plaintiff interrupted prescription as to Permian, its co-tortfeasor—a point, in effect, admitted by Liberty Mutual during oral argument.

Liberty Mutual's motion at this late date on these particular issues (like OIGA's) demonstrates a lack of diligence in its research and potential frivolity. The court, however, finds its conduct to be far less egregious than counsel for OIGA. No perception by the court leads it to believe that counsel for Liberty Mutual has engaged in the tactics demonstrated by its co-Defendant. In any event, the court has no reluctance in denying Liberty Mutual's motion to dismiss for lack of subject matter jurisdiction.

## CONCLUSION

The court, for all of the reasons above, denied by oral ruling in open court the motions to dismiss filed by OIGA and hereby finds, in summary, that: first, diversity jurisdiction may be properly exercised pursuant to the relevant law governing direct actions in tort; second, diversity among the parties clearly existed at the time Plaintiff commenced this action and OIGA was not indispensable to this suit; and, finally, under *Newport Limited*, the circumstances here warrant a retention of jurisdiction.

The motion filed by Liberty Mutual also properly was denied in open court. This Defendant conceded in its supplemental memorandum and during oral argument that its motion depended on the court's findings relative to OIGA's motions. Because the court has decided to revoke and rescind its order dismissing Cooper as such order was based on clearly erroneous facts and because Plaintiff commenced this action prior to amendments governing the court's supplementary jurisdiction, subject matter jurisdiction over LIGA's intervention and Plaintiff's claims properly rests in this court.

The court, in conclusion, hereby RECALLS, VACATES, and SETS ASIDE the order of October 18, 1989, granting summary judgment as to Cooper. The ruling on the pending motions for sanctions shall be reserved until a later date.

IT IS SO ORDERED.